CITY OF OMAHA v. J. B. AYER.

[FILED JULY 1, 1891.]

1. **The instructions** given, and those requested and refused, examined, and *held,* properly refused.

2. **Evidence** examined, and *held,* to sustain the verdict.

ERROR to the district court for Douglas county. Tried below before DOANE, J.

*A. J. Poppleton,* for plaintiff in error, cited: *Burnett v. R. Co.,* 16 Neb., 336; *Lincoln v. Gillilan,* 18 Id., 117; *Pendils v. R. Co.,* 34 N. Y. Sup., 481; *Keller v. R. Co.,* 24 How. [N. Y.], 172; *Hoyt v. Hudson,* 41 Wis., 105; *New Jersey Ex. Co. v. Nichols,* 33 N. J. L., 434; *Hoth v. Peters,* 55 Wis., 405; *Pa. R. R. Co. v. Righter,* 42 N. J. L., 180;

Shearman & R., Neg., sec. 11 ; Wharton, Neg., sec. 420 ; 1 Greenl. Ev., sec. 88 ; *Omaha Horse Ry. v. Doolittle,* 7 Neb., 481 ; Cooley, Torts, 812.

*N. J. Burnham,* and *W. W. Slabaugh,* cited : *A. & N. R. Co. v. Bailey,* 11 Neb., 336 ; *Omaha Horse Ry. Co. v. Doolittle,* 7 Id., 481 ; *Burnett v. R. Co.,* 16 Id., 336 ; *Lincoln v. Walker,* 18 Id., 247.

COBB, CH. J.

The plaintiff brought his action in the district court of Douglas county against the city of Omaha, alleging that the defendant is a municipal corporation under the laws of this state.

2. That on December 13, 1887, there was a public highway in said city, called Thirteenth street, under control of the same.

3. That between the hours of seven and eight P. M. of said day, plaintiff was driving along said street between Williams and Pierce streets.

4. That half way between said streets, on the west side of Thirteenth street, extending nearly to the middle of the latter, lay a large pile of frozen, excavated ground, mixed with building material and rubbish.

5. That plaintiff not being able to see said obstruction from darkness, and not being warned of its existence, from want of guard lights or signals, or protection of any kind, permitted his horse to travel thereon, whereby his wagon was overturned, and he was thrown to the ground and injured severely.

6. That defendant was negligent in permitting the said obstruction to remain in the street without signals or means of warning to persons traveling thereon.

7. That plaintiff used due care and diligence in driving his horse and passing along said street at said time and place, and was in no manner negligent.

8. That defendant has been notified of the injury sustained, and all the other requirements of law complied with.

9. As the result of such negligence and carelessness of the defendant, the plaintiff was injured in his left side, between his sixth and seventh ribs, and also of his left lung, and in his spine; is threatened with paralysis, and has received permanent injuries, and been compelled to expend for medicine and medical attendance $300. He has not been able to work or to attend to his business since said injury, his services being worth $25 per day, and claims damages, $25,000.

The answer of the city of Omaha admits that it is a municipal corporation, as alleged, and that Thirteenth street is a public highway in said city, and denies all other allegations. For a second defense sets up that whatever defect may have existed in said street was unknown to defendant, and whatever injury was sustained was due to the fault and negligence of the plaintiff, and defendant is without fault and negligence in the premises.

The plaintiff's reply alleges that all new matter, not heretofore denied and controverted, is denied.

There was a trial to a jury which returned a verdict for the plaintiff of $5,000.

The defendant's motion for a new trial being overruled, by order of the court a remittitur of $2,000 was entered by the plaintiff and judgment for the balance of $3,000 entered on the verdict. It comes to this court on the following assignment of errors:

1. In permitting the witness Joseph Neville to answer the question: " If a man fifty-seven years of age, somewhere in that neighborhood, should be thrown upon the ground by the upsetting of a buggy while in motion, drawn by a horse in motion, and upon examination by a physician at the time, it was ascertained that his sixth and seventh ribs were dislocated, and his lung injured by the pressure of the rib upon the lung, and upon going home

expectorated blood and mucous matter, and, after receiving the usual medical treatment, bandaged it up properly, took some tonics and was obliged to remain in bed from December 30 to the 8th or 10th of April following, and since then has been able to move around by the aid of a crutch; once within another period confined again and complained of trouble with the lung; confined to his bed for a week or more. A man of his years having received injuries of that kind, with these symptoms, what, in your opinion, would be the result?" A. "There is a condition of things in the question that I don't think would come about. It is assumed there was a dislocation of the rib. If such a condition as the spitting of blood, and the after condition, it would follow fracture of the rib. I don't think the rib, if dislocated, would puncture the pleura or injure the lung, nor the blood escape into the lung, but through the mouth. If there was any bleeding it would not be in the pleura cavity."

2. In permitting the witness N. J. Burnham to answer the question: Q. "State what the contents were of the notice you served upon the mayor." A. "The contents were, 'Omaha, Neb., January 12, 1888. To W. J. Broatch, mayor of the city of Omaha.—Dear sir: or words to that effect, it said the undersigned, while driving down Thirteenth street on December 30, 1887, at half past seven in the evening, ran into an obstruction on the street and received great injury, and defined those injuries as this petition has it—Give me the petition, I copied it from that—the injuries being in the left side, between the sixth and seventh ribs, and an injury to his lungs and to his spine, and further after that was written that notice. I took and put it in my pocket, after carefully comparing it with W. Slabaugh, who was in my office; saw it conformed strictly with the law; took it to Dr. Ayers' bed; he signed it; he read it over and so did Mr. Slabaugh. It did not say anything about Thirtieth street at all. I said Thirteenth street, written in full, in my own handwriting.'"

3. In permitting the witness W. W. Slabaugh to answer the Q. "Do you recollect in substance the contents of that notice?" A. "My recollection is refreshed. I know we endeavored to comply with the print before us, requiring us to set out the nature of the injury, which, I believe, we did in substance as in the petition; also where the injury occurred, which was on Thirteenth street. I am most positive as to when it occurred; it was December 30. I am quite sure there was no error in that."

4. In refusing to allow the witness Alexander Lilliancrone to answer on behalf of defendant the Q. "You may state whether about that time, or for any period of time before that, he was accustomed to drinking excessively."

5. In refusing to allow the same witness to answer the Q. "But in Missouri didn't you see Mr. Butler, and what was it you then said to him touching the condition of Dr. Ayers at the time you talked with him?"

6. In refusing to permit the same witness to answer the Q. "Now will you tell the jury what they said to you by the way of trying to persuade you not to testify against the plaintiff in this case?"

8. In permitting the witness Pat O. Hawes to answer the Q. "You don't know whether it occurred immediately after he got hurt, or about that time or not?" A. "No, sir."

8. In permitting the witness John Kennedy to answer the Q. "About two weeks ago in which Mr. Lilliancrone said to you that he intended to come down here and help the city and do Dr. Ayers all the dirt he could?" A. "I did."

9. In refusing to allow the witness John H. Butler to answer the Q. "You may state what Mr. Lilliancrone said to you as to the condition of Mr. Ayers, as to his intoxication."

10. In giving paragraphs 4 and 5, by the court, of its own motion.

11. In giving 3, 5, and 8 at the plaintiff's request.

12. In refusing to give 9, 10, and 11, asked by defendant.

13. The verdict is not sustained by sufficient evidence.

14. Error in overruling the motion for a new trial.

The counsel for plaintiff in error gives his attention to the assignments of error, based upon the giving and refusing of instructions and the evidence in the case, and does not argue or present those numbered 2, 3, 4, 5, 6, 7, 8, or 9. Upon the trial, the court gave the following instructions upon its own motion:

"GENTLEMEN OF THE JURY: This action is brought to recover damages which the plaintiff claims to have sustained by reason of personal injuries alleged to have been sustained by him on account of the existence of an obstruction in Thirteenth street, in said city of Omaha, on the 30th day of December, 1887. The defendant, in its answer, denies generally the allegation of plaintiff relating to his injury, and the damages sustained by him thereby, and avers that whatever defect or obstruction existed in the street was unknown to the city, and that whatever injury was sustained by the plaintiff was due to the fault and negligence of the plaintiff himself, and without the fault or negligence of the city. You are instructed:

"I. That the care of the streets of the city of Omaha is placed by law upon the city, and the duty is devolved upon it to keep the streets in good repair and in safe condition for the ordinary uses of the public.

"II. The city is liable in damages to any person who, in the lawful use of the street, and without fault or negligence on his part, is injured by reason of a defect or obstruction in the street when the authorities of the city knew of the existence of such defect or obstruction, or where such defect or obstruction has existed for such length of time that the city authorities would be presumed to know of its existence.

"III. The burden of proof is upon the plaintiff to sat-
isfy you by a preponderance of the testimony, of all the
material allegations of his petition, not admitted by the
answer, including the allegation that he used due care and
diligence, and was not negligent in any such manner as to
contribute substantially or directly to his injury.

"IV. The plaintiff was bound to exercise ordinary care
for his personal safety, while driving along the streets of
the city, and if the jury believe from the evidence that
plaintiff's negligence, if any, contributed directly to the
alleged injury received by him, then he is not entitled to
recover in this action, and you will find for the defendant.

"V. The question as to whether the plaintiff was guilty
of contributory negligence is one for the jury to determine
from all the testimony in the case.

"If you shall find that the plaintiff used due and ordi-
nary care in driving along the street at the time and place
when and where the accident occurred, you will then in-
quire whether under the testimony the city authorities
either had notice of the existence of the obstruction in the
street, or that the obstruction had existed in the street for
such a length of time before the accident that knowledge
of the existence of such obstruction by the city authorities
must be presumed.

"VI. If you shall resolve the questions submitted in
the preceding instructions in favor of the plaintiff, you
will then inquire as to the extent of the damages, if any,
suffered by the plaintiff by reason of the injuries com-
plained of.

"In considering the question of the plaintiff's damages,
in case you shall find he is entitled to damages, you may
consider the extent of his physical injuries, the amount of
disability occasioned thereby, the effect which such injuries
have produced, and will in the future produce, upon his
ability to earn his living by the practice of his profession or
otherwise; the physical and mental pain and suffering, if

any, which he has endured by reason of his injuries, and the pecuniary loss he has sustained by reason of the loss of time occasioned by his injuries. But you should not permit any consideration of sympathy for the plaintiff, or of economy for defendant, to influence your verdict."

The court also gave the following instructions at the request of the plaintiff:

"III. The plaintiff was bound only to use such care and caution as a person of ordinary prudence would use under like circumstances.

"V. In considering the question of contributory negligence the jury are to take into consideration the time of day when the injury occurred, the darkness of the night, the fact that snow had recently fallen, and the ease or difficulty of seeing the obstruction with the lights as then located; also the fact that no guards nor signals of any kind were placed near the obstruction.

"Modified by inserting after the word 'night,' in the fifth line, the words 'if such existed,' and given as modified.

"VII. In considering, the question of negligence on the part of the plaintiff the jury may consider the plaintiff's condition on that night, his horsemanship or ability to drive his horse, the fact that he had passed along the street frequently, both night and day, and the probability of his being able to see the obstruction, if it were possible for a person using ordinary care and prudence then and there to see it.

"VIII. The streets of a city are for the benefit of all persons, and all have the right in using them to assume that they are in ordinary good condition and to regulate their conduct on that assumption, and they may drive carefully in the darkness of the night relying upon the belief that the corporation has performed its duty and that the street is in a reasonably safe condition."

Also the following at the request of the defendant:

" If the jury find from the evidence that the plaintiff, knowing of the obstruction, was driving along the street in a careless, inattentive, or absent-minded manner, and by reason thereof drove against or upon the obstruction, then the plaintiff was guilty of contributory negligence and the plaintiff cannot recover damages in this suit.

" 1. The jury are instructed that the obligations resting upon the defendant city to keep its streets in order and repair, is not carried to the extent of making it an insurer of the safety of the streets, and that it does not insure the safety of persons traveling over and along the streets.

" 2. The jury are further instructed that before the plaintiff can recover he must prove to your satisfaction that the city of Omaha had actual notice of the existence of the obstruction complained of, a sufficient length of time before the happening of the accident to have removed the same, or that the obstruction complained of had existed a sufficient length of time to become so notorious that you would be justified in believing that the city did know of the existence of this obstruction for a sufficient length of time to have removed the same before the happening of the accident.

" 3. Whereas there is no evidence on · the part of the plaintiff to show that the city had actual knowledge of the existence of the obstruction complained of prior to the happening of the accident, you are instructed that the burden of proof rests upon the plaintiff to show that the obstruction did exist in the street for such a length of time as to become sufficiently notorious to justify you in coming to the conclusion that the city did know of the existence of the obstruction, and that the city had sufficient time to remove the same after having acquired knowledge of its existence prior to the happening of the accident.

" 4. The jury are further instructed that in addition to the constructive notice to the city of the existence of the obstruction, that in order to recover, the plaintiff must also

prove that within a period of twenty days after the happening of the accident he also gave, or caused to be given, a written notice to the mayor of the city, describing, among other things, the place where the accident happened.   Under all testimony on this subject it is for you to say whether such written notice did describe the place where the accident happened.

"5. Before the plaintiff can recover, you must be satisfied from the evidence that he was free from any negligence on his part which contributed directly to the alleged injury; and if from all the evidence you believe that the plaintiff's negligence contributed to the happening of the accident and the causing of the alleged injury, then he cannot recover.

"6. In deciding upon the question of the plaintiff's negligence the jury are to consider the length of time that the plaintiff had personally known that the obstruction existed in the street, and you are also to take into consideration the number of times plaintiff had driven along the street by and around this obstruction, and how familiar he was with the street and that locality, and the other circumstances surrounding the case; and if from all the circumstances you are of the opinion that by the use of ordinary care he could and would have avoided this obstruction, then you would be justified in finding that he was guilty of negligence contributing to the injury, and in such case the plaintiff cannot recover.

"7. The jury are instructed that if the plaintiff had actual knowledge of the existence of the obstruction complained of, and had driven by the same many times, and if, from all the evidence, you believe that through inattention on his part to the condition of the street, or through carelessness in not watching where he was driving, he drove against or upon the obstruction, then he was guilty of contributory negligence, and cannot recover.

"8. The jury are instructed that if from all the evidence you believe that the plaintiff knew of this obstruction, and

had driven by it many times, and if you find from the evidence that there was abundant room in the street which was free from obstruction, so that by the use of ordinary care and diligence he could have driven around the obstruction with safety, then you are instructed that it was the duty of the plaintiff to have avoided the obstruction, and if he failed to avoid it by mere lack of attention or want of care on his part, then he was guilty of contributory negligence, and cannot recover."

Upon the trial the defendant requested the court to instruct the jury as follows, which request was refused by the court:

"The jury are instructed that the plaintiff was bound to exercise ordinary care for his personal safety while passing along the street where the obstruction was, and if the jury believe from the evidence that the plaintiff's slightest negligence, if any, contributed directly to the alleged injury, then you will find for the defendant."

While I would not fully approve of the language of this instruction in the use of the words "the slightest," it cannot be doubted that it contains a substantially correct expression of the law, and had its substance not been given by the court at least once in the case as fully and fairly as that set out in the instruction refused, its refusal would doubtless be error; but in at least three of the paragraphs of the instructions given by the court on its own motion, and one of the paragraphs given by the court at the request of the defendant, all of the substance of the paragraph refused, now under consideration, was given, and it is a universal rule that where the law on a particular point has once been clearly and substantially stated by the court in an instruction to the jury, it is not error to refuse a succeeding request containing only the same matter presented by either party. Upon that ground it must be held no error on the part of the court in refusing this request

27

of the defendant. This instruction was properly refused for the reason stated.

Also the following, which was also refused:

"The jury are further instructed that the burden of proof rests upon the plaintiff to show by a preponderance of evidence, that he himself used ordinary care in driving along the street at the time when the accident happened, and to further prove by a preponderance of evidence that he was not guilty of any negligence which contributed to the injury complained of, and upon the failure so to do you will find for the defendant."

Until the case of the *City of Lincoln v. Walker*, 18 Neb., 244, there was no settled rule recognized by this court in regard to the party upon whom rested "the burden of proof of contributory negligence," but the rule was settled in that case by the adoption of the following syllabus by the court: "In an action for negligence, where the plaintiff can prove his case without disclosing any negligence on his part, contributory negligence is a matter of defense, the burden of proving it being upon the defendant."

And also the following:

"The jury are instructed that whereas the plaintiff in his own testimony admits that he personally knew that the obstruction had existed in the street for at least a period of ten days, and he had frequently driven along the street and by the obstruction so as to see it from time to time, and that on that particular day when the accident happened, he had driven by this obstruction from three to five times, and whereas the plaintiff has not shown by the evidence any particular excuse or cause for having driven upon or against this obstruction on the night when the accident happened, and such facts being undisputed, you are instructed that these facts and circumstances show contributory negligence on the part of the plaintiff, and you are instructed, therefore, that the plaintiff cannot recover and that you should return your verdict for the defendant."

This instruction would, I think, have come nearer commending itself to the approval of this court had it left off the preamble, and simply instructed the jury to find for the defendant; yet I do not think that there was such evidence of contributory negligence contained in the testimony of the plaintiff as either called for such instruction or as even to throw the burden of disproving contributory negligence upon the plaintiff. The facts before the jury called for their consideration of many elements entering into the case. The fact of the injury taking place in the night-time, the recent and continuing fall of snow, the absence of street lamps or lights in the near vicinity of the obstruction, these at least required the serious consideration of the jury in arriving at the conclusion as to whether the plaintiff was guilty of contributory negligence.

These facts and circumstances were somewhat similar to those to which the attention of the jury in the case of *Stout v. Railroad* was called and referred to in the opinion in *Railroad v. Stout*, 17 Wallace, 657, in which said court uses the following language :

" Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established, from which one sensible, impartial man would infer that proper care had not been used and that negligence existed; another man, equally sensible and equally impartial, would infer that proper care had been used and that there was no negligence. It is this class of cases, and those akin to it, that the law commits to the decision of a jury. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring, than a single judge.

" In no class of cases can this practical experience be more wisely applied than in that we are considering. We

find accordingly, although not uniform or harmonious, that the authorities justify us in holding in the case before us. that although the facts are undisputed, it is for the jury and not for the judge to determine whether proper care was given, or whether they established negligence."

Following the above case and that of the *A. & N. R. R. Co. v. Bailey*, 11 Neb., 332, we must hold, that the district court did not err in refusing to give the instruction in question or in refusing to take the case from the jury.

The thirteenth assignment in the petition in error is: " That the verdict is not sustained by sufficient evidence." This assignment is not discussed except in the contention of counsel that the evidence tended to prove contributory negligence on the part of the plaintiff. All of the evidence, which was ample, as to the obstruction in the street, the injury and damage to the plaintiff thereby, and the extent or amount of his damage, not being discussed by counsel, that point will not be further pursued.

Counsel make the point that paragraph eight of the charge given by the court on its own motion, is erroneous, for the reason that it ignores the fact that the plaintiff admits in his own testimony that he had seen this obstruction, and knew where it was, and had driven three times past it on the very day of the accident. While I think that in this connection counsel stated the testimony of plaintiff too strongly against him, yet, if this paragraph stood alone, I should agree with counsel that while laying down the law as the court did in this part of the charge, it should have directed the attention of the jury to this peculiarity in the circumstances of the injury, but it will be seen by an examination of the instructions that in number seven of the same series the court had already called the attention of the jury to the fact " that he (plaintiff) had passed along the street frequently both night and day, and mentioned the probability of his being able to see the obstruction if it were possible for a person using ordinary care and pru--

dence then and there to see it," and also in and by the instructions, given at the request of the defendant, the court had at least once called the attention of the jury to the knowledge of the plaintiff of the existence of this obstruction in the street, and to the consideration of the question whether he was or not negligent in driving upon the same, possessed of such knowledge and his ability to keep clear of the obstruction.

The last point argued by counsel for defendant in error in the brief is that there was a failure on the part of the plaintiff to prove the service upon the defendant of the notice provided for by section 142 of the charter for metropolitan cities then in force. Upon the trial the plaintiff called Nathan J. Burnham, one of his counsel, who testified that he wrote out a notice and delivered it to the mayor of the city, Hon. W. J. Broatch, on whom he served it on the 12th day of January, that the mayor made a memorandum in his diary of the receipt of the notice and delivered it to Webster, and that Mr. Webster told witness he received the notice and knew of the notice being delivered to the city clerk.

This evidence the court refused to strike out on motion of the defendant. Afterwards this witness was recalled by the plaintiff and examined by his co-counsel in reference to the contents of the notice or letter above referred to. He answered: "The contents of that notice was the letter dated Omaha, Neb., January 12, 1888. To W. J. Broatch, mayor of the city of Omaha—Dear Sir: The undersigned, while driving down Thirteenth street on the 30th day of December, 1887, at half past seven in the evening, ran into an obstruction in the street and that he had received great injury and defined those injuries as this petition has it—(the witness said, 'Give me that petition, I copied it from that')—the injuries being in the left side between the sixth and seventh ribs and an injury to his lungs and to his spine; and further, after that was written

that notice. I took and put it in my pocket after carefully comparing it with Mr. Slabaugh, who was in my office, saw it conformed strictly with the law. Took it to Dr. Ayers' bed, he signed it; he read it over, and so did Mr. Slabaugh. I did not say anything about Thirtieth street at all. I said Thirteenth street in full in my own handwriting."

Upon cross-examination witness stated as to his recollection of the circumstances, "I am speaking of it because it has been in my mind ever since it was served. It is no ordinary matter like an ordinary letter. I have tried to get at this notice some time."

Plaintiff also called W. W. Slabaugh, also of counsel, who corroborated the testimony of Mr. Burnham in regard to the drafting of the notice and letter. Plaintiff was also himself placed upon the stand and testified that he recollected of his counsel having brought to him a paper, like the one served on the mayor, which he signed.

The argument of counsel is based chiefly, if not entirely, upon the statement or rather exclamation of witness Burnham when on the stand and called upon to give the contents of the notice, "Give me the petition in the case; I copied it from that." From this counsel draws the conclusion, and infers the argument that inasmuch as the petition in the case was not filed until the 25th day of January, twenty-six days after the accident, so that if the witness had copied the letter and notice from the petition he could not have done it within twenty days from the date of the injury, as required by the statute.

This argument would have great force if it were true in point of fact or professional experience that petitions are always and necessarily filed immediately upon being drafted, but the premises lack that quality. In fact, it seems to me that it were much more probable that a form or description would be taken from the draft of the petition in a lawyer's office, before it was carried to the clerk

of the district court and there filed, than afterwards, and there is certainly nothing in the language of Mr. Burn ham which forbids that meaning being placed upon his language. True, he did not say, " I copied it from the draft of the petition," but no violence is done to his language when that construction is placed upon it. Indeed, I have always thought that attorneys and counsel doing a large and extensive business, as all of those engaged in this case are known to have been, universally retain in their offices a copy of all petitions, and ought to of all papers taken therefrom for the purpose of filing or service, and these retained copies are spoken of, and properly so, except when special attention is drawn to the distinction, as the petition answered, etc., in the case.

While it may be admitted that the evidence of the service of this notice is somewhat slight, yet there is some evidence of it. It was therefore before the jury and entitled to some weight, force, and effect. The judgment of the district court is

AFFIRMED.

THE other judges concur.